## GARRETT VAN SICKLE, RESPONDENT, *v.* SAMUEL K. NESTER, APPELLANT.

*Contract for the sale of property — when all the property contracted for must be delivered — when a refusal to receive a portion relieves the other party from the necessity of making a further tender.*

The plaintiff agreed with the defendant to sell to him all the barley that he should raise during the season of 1880 on two farms, one of which was worked by the plaintiff himself, and the other by a tenant under a contract that the latter should have one-half of the crops raised thereon. He delivered the barley raised on the first farm and his half of that raised on the second, his tenant having sold his half to other persons. The defendant claiming to be entitled to all the barley raised on the second farm it was agreed that the plaintiff should be allowed to purchase and deliver an amount of merchantable barley equal to the tenant's half, 306 bushels, in fulfillment of his contract. The plaintiff accordingly purchased barley and tendered three loads to the defendant, one of which consisted of barley raised on his own farm and retained for seed. The defendant refused to accept either of the three loads upon the ground that the barley was not merchantable or of the quality agreed upon. The evidence as to the quality of the barley was conflicting and the jury found in favor of the plaintiff.

In an action to recover a balance due on the barley delivered, in which the failure of the plaintiff to deliver the said 306 bushels was set up as a defense:

*Held,* that it was not intended that the whole 306 bushels should be delivered in one body and at the same time, but that the plaintiff might deliver the same in wagon loads from time to time.

That a wrongful refusal of the defendant to receive the three loads of the barley so tendered to him, was a breach of the contract on his part and relieved the plaintiff from the necessity of making any further tender.

That the agreement did not impose upon the plaintiff the duty of having had the

whole amount of the barley ready for delivery, but that he might purchase and deliver it from day to day.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury recovered at the Ontario County Court, and from an order of that court denying a motion for a new trial.

*John Gillette, Jr.,* for the appellant.

*D. G. Latten,* for the respondent.

HAIGHT, J. :

This action was originally brought in a Justice's Court. From the judgment entered therein an appeal was taken to the Ontario County Court and a new trial was had in that court. The jury rendered a verdict in favor of the plaintiff for seventy-four dollars and sixty-nine cents.

It appears from the evidence contained in the appeal book that the plaintiff was the owner of a farm at Shortsville and one at Geneva; that the farm at Shortsville was worked by himself, and the one at Geneva was worked by one Wright, under a contract that he should have one-half of the crops raised thereon. In the spring of 1880 the plaintiff entered into a contract with defendant to sell and deliver to the defendant all the barley that he should raise during the season upon the two farms, excepting such as should be necessarily reserved for seed, for seventy-five cents per bushel, and that he should plant eighty acres. In pursuance of this agreement the plaintiff delivered to the defendant the barley raised upon the Shortsville farm. He also delivered 306 bushels of the barley raised upon the Geneva farm, being his half thereof. The tenant Wright sold and delivered his barley to other persons. The defendant made payments on account of the barley delivered, and there remained a balance of sixty-nine dollars and eighty-one cents. When the plaintiff demanded this balance the defendant refused to pay, upon the ground that only half of the barley raised upon the Geneva farm had been delivered to him, and that under the contract he was entitled to the other half. The parties then entered into further negotiations, and it was subsequently agreed between them that the plaintiff might fulfill the contract by purchasing and delivering to the defendant other merchant-

able barley of equal quality with the barley raised upon the Geneva farm. In pursuance of this agreement the plaintiff purchased barley and tendered to the defendant three loads, one of the loads consisting of the barley raised by him upon the farms and reserved for seed. The defendant refused to accept either of the three loads of barley so tendered, upon the ground that the barley was not merchantable and was not of the quality agreed upon. The evidence as to the quality and weight of the barley so tendered is conflicting.

The appellant contends, in the first place, that the court erred in refusing to nonsuit the plaintiff on the ground that the plaintiff could not recover in the action under the complaint. The complaint was for balance due on sale of barley. The evidence in reference to the supplemental contract was given without objection, and when the motion for nonsuit was made, the plaintiff asked leave to amend the complaint so as to conform it to the evidence given, and this motion was granted, and under the circumstances, we think, properly. The power to amend upon the trial is given by the Code. It does not appear that the defendant was surprised or prejudiced by such amendment. (Code, § 2944.)

Again it is contended on the part of the appellant that the court erred in refusing to charge that the evidence of the plaintiff as well as of the defendant establishes the fact that the plaintiff sold to the defendant all of the barley grown on the two farms, except that reserved for seed, and that it was his legal duty under such agreement to deliver all so growing, no matter whether as between himself and Wright, Wright, as cropper, might claim his share of the barley raised on the Geneva farm. This request was made and refused after the court had concluded its charge to the jury. The court had already held and decided that under the original agreement the plaintiff was bound to deliver all of the barley, except that reserved for seed, raised upon the two farms and had so instructed the jury and taken that branch of the case from its consideration. The only question which the court submitted to the jury was the question as to whether or not there was a breach under the supplemental agreement. Inasmuch as this branch of the case had been taken from the jury it was not necessary to repeat the legal effect of the original agreement.

Again, the defendant requested the court to charge that, under

the modified agreement, if the plaintiff did not purchase or have enough barley of the quality required to make the amount to be delivered, he cannot recover; that in order to enable the plaintiff to recover he must have offered, or had ready for delivery, enough barley of proper quality to make up the amount which had not been delivered; that if any portion of the three loads of barley tendered was of an inferior quality to that required, the defendant had a right to decline to receive all of the barley offered, and the plaintiff cannot recover. These requests to charge were refused by the court, and the court charged instead thereof that if one of the loads so tendered was raised on the Geneva farm, and was of the same quality of that previously delivered, it was the duty of the defendant to have received that load, whether the other two loads complied with the contract or not. To the charge as made, and the refusals to charge, the defendant duly excepted, and this presents the only remaining question to be considered upon this appeal.

In the case of *Hill* v. *Heller* (27 Hun, 416) the defendant agreed to purchase of the plaintiff 100 tons of refined alkali, to be shipped to New York by a January sailing ship. In April the ship arrived with the quantity of alkali contracted for contained in ninety-two casks. Thirty-five of the casks, however, had been damaged by water so that the defendants were not required to accept them. The defendants offered to accept the remaining fifty-seven casks if the plaintiff would allow them to take the casks to their works open and examine their contents. This the plaintiff refused to do. It was held that the defendants, by offering to accept the fifty-seven casks, if allowed to examine them, had not waived their right to insist that the failure of the plaintiff to tender the whole amount of alkali required by the contract prevented him from maintaining the action.

In the case of *Husted* v. *Craig* (36 N. Y., 221) there was an entire contract, by which the plaintiff agreed to furnish oil-cloths and carpets and to carpet the defendant's house. He did a part of it in an unskillful and unworkmanlike manner. It was held that the defendant had the right to return the goods and avoid the contract.

In the case of *Baker* v. *Higgins* (21 N. Y., 397) the contract was to deliver 75,000 bricks. A cargo consisting of 21,000 bricks

was delivered upon the contract and payment demanded, which was refused until the whole amount was delivered. It was held, under the peculiar contract in that case, that the contract was entire to deliver the 75,000, and that there was no contract to pay until the whole was delivered.

In the case of *Dunham* v. *Mann* (8 N. Y., 508) the contract was for the sale of a quantity of iron. It was held that the contract was for the delivery of the entire quantity before payment, and that it was necessary to tender the whole before a recovery could be had.

In the case of *Hamilton* v. *Ganyard* (34 Barb., 204) the defendant agreed to sell and deliver, in merchantable order, his crop of corn then growing on thirty-five acres of ground. Three-fourths of it turned out to be unmerchantable. He tendered the good and bad together, without proposing or offering to deliver any except in that way. It was held that he was bound to deliver the merchantable corn, and that the purchasers were not bound to receive the corn tendered in fulfillment of the agreement, but might treat the contract as broken and bring their action to recover damages.

These authorities are relied upon by the appellant in support of his claim. Reference has thus been made to them for the purpose of showing that they do not decide the question here presented. No question is made in reference to the proposition that in case one party sells another, property to be paid for upon delivery, that the property must be delivered or tendered in order to maintain an action.

In this case, however, the respondent claims that the appellant was guilty of a breach of contract; that he tendered to the defendant barley of the kind and quality called for by the contract, and that the defendant refused to accept it and was therefore guilty of a breach. In this regard the case is distinguishable from all of the cases cited.

The plaintiff was a farmer; the barley sold was to be raised upon his farms; the barley was to be delivered at the defendant's warehouse. It was delivered by teams in wagon-loads. It does not appear that there was any other way in which it could be delivered. No question was raised as to the mode or manner of making the

delivery. It would hardly be possible, nor do we think it was within the contemplation of the parties that the entire crops raised were to be delivered in one body and at one time. Neither do we think it to be within the contemplation of the parties that the 306 bushels remaining to be delivered under the modified or supplemental agreement was to be delivered in one body, but by wagonload, as the barley had been previously delivered.

It is true that under the agreement it was the duty of the plaintiff to have continued to purchase and deliver until he had delivered the entire amount of 306 bushels before he could maintain his action, unless, in the meantime, the defendant was guilty of some act which amounted to a breach upon his part or a waiver of the necessity of delivering the entire amount. This rule is expressly recognized in the case of *Avery* v. *Willson* (81 N. Y., 341), and appears to be controlling upon the question. If the plaintiff drew to the defendant a load of barley and tendered it upon the contract, and the barley in all respects corresponded with that required by the terms of the contract, and the defendant refused to accept it, it cannot be that the rule is that the plaintiff must continue, day after day, to draw other loads to the defendant and have them refused until he has drawn and tendered the whole amount required by the contract. Such a rule would be a hardship and unjust. The defendant, by refusing to accept, was guilty of a breach of the contract, and this breach dispensed with the necessity of the plaintiff's offering to deliver the rest. If there had been no breach of the contract on the part of the defendant; if the barley was not of the quality required by the contract, then he had a right to refuse to accept, and it would then have been the duty of the plaintiff to have purchased and delivered other barley. But upon this question the evidence is conflicting. It was submitted to the jury and the jury have found in favor of the plaintiff.

Neither do we think that it was the duty of the plaintiff to have the whole amount on hand ready for delivery. Under the terms of the agreement he had the right to go out and purchase barley of others and to deliver the same upon the contract. He had the right to continue to purchase from day to day until he had purchased loads enough to amount to the number of bushels required. He had the right to tender the barley upon the contract load by

load as he purchased it, and it was not necessary after a breach of the contract by the defendant to continue on purchasing other barley to be offered and refused.

' But again it is contended that the plaintiff tendered three loads and that the defendant refused to accept the three loads; that on the defendant's refusing to accept the three loads, that then it was the duty of the plaintiff, if one of the loads complied with the contract and the other two did not, to have offered to deliver that one load. We are of the opinion, however, that under the evidence in this case a tender of that one load separate from the others was not necessary. The barley of one of the loads consisted of the barley reserved for seed and was raised upon the plaintiff's farms. It does not appear to have been mixed or mingled with the barley contained in the other loads. The defendant sampled and tested the barley in each of the loads. He then refused to accept the three loads, and refused also to accept the one load unless the plaintiff would consent to his taking fifty pounds for the bushel, when forty-six pounds was the standard weight. His refusal to accept this load, except upon the condition named, rendered it unnecessary for the plaintiff to separately tender it in any other form or manner than he had done.

We are of the opinion that the judgment and order should be affirmed.

SMITH, P. J., BARKER and BRADLEY, JJ., concurred.

Judgment and order affirmed.